JAMES DUNAVAN, Plaintiff-Appellant, *v.* HERITAGE HOUSE NURSING HOME *et al.*, Defendants-Appellees.

Fifth District   No. 82—663

Opinion filed January 26, 1984.

814

Michael J. Logan, of Calandrino, Logan and Berg, P.C., of Springfield, for appellant.

James B. Wham, of Wham & Wham, of Centralia, for appellees.

JUSTICE JONES delivered the opinion of the court:

Plaintiff appeals from an order of the trial court that dismissed his second amended complaint for damages for personal injuries and from a subsequent order denying his motion for reconsideration. The basis of the court's order of dismissal was that because of mistaken identity the plaintiff had brought suit against and served the wrong party defendant. In its order the court denied the plaintiff leave to amend his complaint to change the name of the defendant on the basis of a misnomer because the statute of limitations was a bar to the action. We affirm.

There is no dispute of the facts. Plaintiff was a nursing home inspector employed by the State of Illinois. On June 15, 1976, in the course of his duties, he slipped and fell at a nursing home in Vandalia called Heritage House Nursing Home, allegedly receiving the injuries that are the subject of this suit. On June 14, 1978, plaintiff filed his

complaint for personal injuries, naming as parties defendant "Heritage House Nursing Home and Bonnie Johnson, its Administrator." The complaint was filed one day before the expiration of the applicable two-year statute of limitations. Service of summons was made, as shown by the sheriff's return, upon "Bonnie Johnson," without more, and also upon Heritage House Nursing Home by serving Doris Langston, "registered agent, officer or agent." Service on both parties was made on June 20, 1978, a time after the expiration of the two-year statute of limitations.

On July 17, 1978, a motion to dismiss the complaint was filed on behalf of the named defendants on the grounds that Heritage House Nursing Home was not a legal entity and that no cause of action had been stated against Bonnie Johnson. No further action was taken until September 1, 1981, when plaintiff filed a motion for leave to file an amended complaint substituting "Langston Enterprises, Incorporated, a Foreign Corporation" in place of defendants Heritage House Nursing Home and Bonnie Johnson, its administrator. "Bonnie Johnson, its Administrator" was not included as a party defendant in the amended complaint plaintiff sought leave to file. The court heard argument on plaintiff's motion on September 1, and, on October 8, 1981, entered the following record sheet order:

> "This matter having come on for hearing on plaintiff's Motion for Leave to File Amended Complaint to substitute a party defendant and objection thereto by defendant and the Court having heard arguments and considered briefs as prepared by counsel, deny [sic] plaintiff's Motion to add or substitute party defendant. Said ruling is based on the requirements of Sec. 46(4) of the Civil Practice Act of Illinois. Specifically this Court finds that plaintiff has not carried the burden of showing, as he must, that the party to be added or substituted within the time that the action might have been brought or the right asserted against him, knew that the original action was pending and that it grew out of a transaction or occurrence involving or concerning him. The plaintiff has failed to show or demonstrate this to the Court. Therefore, plaintiff cannot avail himself of the benefits of this situation. Complaint dismissed.
>
> Defendant's [sic] Motion to Dismiss granted with leave given plaintiff to file an Amended Complaint against Bonnie Johnson."

No appeal was taken by plaintiff from the order of October 8 that denied plaintiff the right to substitute Langston Enterprises, Incorporated, a foreign corporation, as a party defendant in the place of Her-

itage House Nursing Home, and we do not review the propriety of that order.

On November 2, 1981, plaintiff filed an amended complaint naming as the sole defendant "Bonnie Johnson, Administrator of Heritage House Nursing Home." In response to a motion, the amended complaint was dismissed, and plaintiff was granted leave to file a second amended complaint by a record sheet order of March 26, 1982.

The second amended complaint was filed on March 26, 1982, naming as the sole defendant "Bonnie Johnson, Administrator of Heritage House Nursing Home." The second amended complaint was in one count and was directed against "Bonnie Johnson, Administrator of Heritage House Nursing Home." Numbered paragraph one of the complaint alleged that on June 16, 1976, Langston Enterprises, Incorporated, owned and operated a nursing home called Heritage House Nursing Home. Numbered paragraph two alleged that Bonnie Johnson was employed by Langston Enterprises, Incorporated, as "an" administrator of Heritage House Nursing Home. The remaining nine paragraphs of the second amended complaint were given to allegations of the negligence of the defendant, and it concluded with a prayer for a judgment against "Bonnie Johnson, Administrator of Heritage House Nursing Home."

Bonnie Johnson thereupon filed a motion to dismiss the second amended complaint pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48). The motion was supported by her affidavit that attested that although she had been an employee at Heritage House Nursing Home for a number of years prior to May 1975, she had left that employment some time in April 1975 and had never thereafter returned to work for Langston Enterprises, Incorporated. The affidavit further recited that she had not been on the premises of the Heritage House Nursing Home after April 1975. These facts were not disputed by the plaintiff in any way. Following a hearing and the submission of briefs, the court dismissed the second amended complaint by the following record sheet entry of June 23, 1982, that comprises the order that is the subject of this appeal:

> "The Court has considered the pleadings on file, arguments of counsel and briefs which were submitted by counsel for both parties; after considering all of the above, the Court finds that the naming of 'Bonnie Johnson as Administrator ***' in the Second Amended Complaint herein is a case of mistaken identity and not merely a misnomer which could be now corrected under Sec. 21 of the Civil Practice Act; the Court also finds that the plaintiff cannot now avail himself of the provisions of

Sec. 46(4) to add or substitute a party defendant as the Statute of Limitations has expired; accordingly defendant's Motion to Dismiss is granted as to the 2nd Amended Complaint."

By an order entered on October 15, 1982, plaintiff's motion for reconsideration was denied, and this appeal followed.

It is plaintiff's contention on appeal that section 21 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 21) is addressed to misnomer in pleadings and authorizes the change of the name of the defendant in the second amended complaint from Bonnie Johnson, administrator, to Doris Langston, administrator. Plaintiff notes that service of summons was made upon both Bonnie Johnson, a past administrator of Heritage House Nursing Home, and Doris Langston, the registered agent of Langston Enterprises, Incorporated, the owner and operator of Heritage House Nursing Home. Plaintiff reasons that the designation of an individual, that is, Bonnie Johnson, in the caption of the complaint as an administrator, with no additional designation of such person as being a party individually, should have been sufficient indication of the party intended to be sued, namely, the administrator, provided service was in fact effected upon the proper party. In this case, plaintiff continues, the proper party "for service" was Doris Langston, now alleged to be the administrator of Heritage House Nursing Home, and service was effected upon her when she was served as the registered agent of the corporation that operated Heritage House Nursing Home.

Section 21(2) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 21(2)) provides:

"(2) Misnomer of a party is not a ground for dismissal but the name of any party may be corrected at any time, before or after judgment, on motion, upon any terms and proof that the court requires."

Since the statute of limitations had run on plaintiff's cause of action at the time service of summons was effected, substitution of the parties could be made only for misnomer pursuant to section 21(2). A new party could be added only if all the conditions of section 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46(4)) had been met. That section provides that a cause of action against a person not originally named a defendant is not barred by lapse of the time provided in a statute or contract within which to bring an action or assert a right, but the prescribed conditions must be fulfilled.

The recent case of *Clinton v. Avello* (1982), 105 Ill. App. 3d 336, 338, 434 N.E.2d 355, 356, recites the following, with which we fully agree:

■■ "The pivotal inquiry in dealing with an issue of misnomer is who did the plaintiff intend to sue. (*Schultz v. Gerstein* (1977), 50 Ill. App. 3d 586, 365 N.E.2d 1128; *Cigan v. St. Regis House Hotel* (1979), 72 Ill. App. 3d 884, 391 N.E.2d 197; *Ashley v. Hill* (1981), 101 Ill. App. 3d 292, 427 N.E.2d 1319.) To conduct this inquiry, a court must look at evidence in the record which serves as a manifestation of the plaintiff's intent. *Fitzpatrick v. Pitcairn* (1939), 371 Ill. 203, 20 N.E.2d 280; *Goff v. Will County* (1941), 311 Ill. App. 207, 35 N.E.2d 718; *Ashley v. Hill* (1981), 101 Ill. App. 3d 292, 427 N.E.2d 1319.

The most probative evidence of who a plaintiff intended to sue is the party named by the plaintiff in the complaint. If such a party in fact exists, but is not the real party in interest, a court can conclude that the plaintiff has mistakenly sued the wrong party. *Fitzpatrick v. Pitcairn* (1939), 371 Ill. 203, 20 N.E.2d 280; *Schaffner v. B. & W. Auto Sales Co.* (1944), 321 Ill. App. 632, 53 N.E.2d 318; *Marsden v. Neisius* (1955), 5 Ill. App. 2d 396, 126 N.E.2d 44."

The court in *Clinton* noted that the plaintiff intended to sue the driver of the car who caused his injuries. They said, however: "We do not believe that such general descriptive language in a complaint is sufficient evidence of who the plaintiff intended to sue. It merely begs the question for a plaintiff to contend that he intended to sue the party that caused his injuries." (105 Ill. App. 3d 336, 338, 434 N.E.2d 355, 356.) We think that much the same situation pertains in the case under consideration and that we have a case of mistaken identity rather than an instance of misnomer.

It is apparent from the original complaint filed in this case that the plaintiff intended to sue the entity operating the nursing home *and* the administrator of the nursing home. Both were named and both were charged with negligence in a one-count complaint. However, the name ascribed to the nursing home was, on its face, a legal non-entity, and the name of the administrator was in error because the person so designated was, it later developed, neither the administrator nor an employee of the nursing home.

Over three years after filing his original complaint, plaintiff sought leave to file an amended complaint in which he correctly designated as a party defendant the corporation that owned and operated the nursing home as the sole party defendant. Basing its ruling on section 46(4) of the Civil Practice Act, the court denied plaintiff leave to file this complaint. That order was not appealed. Thereafter, no further effort was made by plaintiff to bring in the named corpora-

tion, Langston Enterprises, Incorporated, as a party defendant.

Following the unsuccessful effort to add the corporation as a party defendant, plaintiff turned his efforts toward the administrator of the nursing home. In two subsequent amended complaints, plaintiff named Bonnie Johnson, administrator of the Heritage House Nursing Home, as the only defendant. The second amended complaint, the one we review, alleges that Langston Enterprises, Incorporated, at material times, employed Bonnie Johnson as administrator of Heritage House Nursing Home. Specific acts of negligence are alleged to have been committed by defendant. The second amended complaint concludes with a prayer for a judgment against "Bonnie Johnson, Administrator of Heritage House Nursing Home," in excess of $15,000.

> "The misnomer rule is narrow, however, and applies only where an action is brought and summons served upon a party intended to be made a defendant (thus giving actual notice of the lawsuit against the real party-in-interest), but the process and complaint do not refer to the person by his correct name. (*Janove v. Bacon* (1955), 6 Ill. 2d 245, 250, 128 N.E.2d 706, 709; *Ingram v. MFA Insurance Co.* (1974), 18 Ill. App. 3d 560, 566, 309 N.E.2d 690, 695, *appeal denied* (1974), 56 Ill. 2d 587.) The courts of this State have long distinguished the misnomer rule, which is applicable only to correctly joined and served but misnamed parties, from those cases where due to mistaken identity the wrong person is joined and served. (*E.g., Proctor v. Wells Brothers Co. of New York* (1914), 262 Ill. 77, 104 N.E. 186, *aff'g* (1913), 181 Ill. App. 468; *Cigan v. St. Regis House Hotel* (1979), 72 Ill. App. 3d 884, 391 N.E.2d 197.) The determination of whether a case involves misnomer or mistaken identity depends on the intent of the parties, but the subjective intention of plaintiff as to who he intended to sue has not been held controlling in the face of objective manifestations indicating an intent to sue another. *Proctor v. Wells Brothers Co.* (1914), 262 Ill. 77, 80-81, 104 N.E. 186, 187." (*Ashley v. Hill* (1981), 101 Ill. App. 3d 292, 294-95, 427 N.E.2d 1319, 1321.)

Also see *Leonard v. City of Streator* (1983), 113 Ill. App. 3d 404, 447 N.E.2d 489.

In the posture presented, the second amended complaint seeks a judgment against Bonnie Johnson, personally and individually. Bonnie Johnson, administrator, is not an entity separate and apart from Bonnie Johnson, an individual. The appellation of "Administrator of Heritage House Nursing Home" following the name of Bonnie Johnson is nothing more than a descriptive term. It neither constitutes nor de-

scribes a legal entity. It neither adds to nor detracts from the personal liability of the individual named as administrator, especially where, as here, there is no attempt in the complaint to impose liability vicariously upon the employer corporation. The term "administrator" as a suffix provides no source for collection of any judgment rendered other than from Bonnie Johnson. As we have already noted, Heritage House Nursing Home is not a legal entity. There is no attempt made in the second amended complaint to allege or show that Bonnie Johnson, administrator, is the *alter ego* of Langston Enterprises, Incorporated, or to show in any manner that that corporation would be liable for any judgment that might be rendered against Bonnie Johnson. While a person employed in the capacity of an "administrator" may be a proper party to receive service of summons for the entity which the administrator serves, the administrator cannot be said to be the *alter ego* of that entity. "The administrator," as used in this case in particular, is an especially informal designation. Webster's Third New International Dictionary defines "administrator," in the context applicable here, as: "[O]ne that administers: as *** an officer that directs or superintends affairs (as of a business, school or government agency)." (Webster's Third New International Dictionary 28 (1961).) It is stated in C.J.S. that "[t]he term [administrator] is sometimes used in a generic, not a technical sense, as being broad enough to include all who administer property within the particular class by whatever name called. So used, the word may be defined in a general sense, as one who administers, a manager ***." 2 C.J.S. 80 (1972).

█ In view of the foregoing analysis, when Bonnie Johnson's section 48 motion and affidavit disclosed that she had not been an employee of Langston Enterprises, Incorporated, for two months prior to, and was not at the nursing home at the time of plaintiff's accident, plaintiff's case against Bonnie Johnson collapsed. Plaintiff had brought suit against the wrong person, an instance of mistaken identity rather than of misnomer. It is of no consequence that the wrong person was designated an administrator.

█ Even if the descriptive appellation of "Administrator of Heritage House Nursing Home" be appended to the name of Doris Langston, whom plaintiff seeks to substitute for Bonnie Johnson, plaintiff's case cannot be resurrected. That Doris Langston was the administrator of the nursing home on the date of plaintiff's accident would not in and of itself impose liability for that accident upon Langston Enterprises, Incorporated. In the capacity of administrator she, like Bonnie Johnson, would be at most a proper agent for service of summons upon the corporation had the corporation been named a defendant. If

personal liability were in fact sought against her, the fact that she was administrator of the nursing home at the time of the accident would not absolve her from her personal liability, nor would it permit imposition of liability upon the corporation that had already been dismissed out of the case as a party defendant. Accordingly, any attempt at this late date to impose personal liability upon Doris Langston has long been barred by section 46(4) of the Civil Practice Act. And aside from the impediment of section 46(4), her name cannot be substituted for that of Bonnie Johnson because of a misnomer pursuant to section 21(2) of the Civil Practice Act. It was an instance of mistaken identity.

Affirmed.

KARNS and HARRISON, JJ., concur.